UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| THREE T NURSERY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 4:11-cv-29 |
| v. ) | *Lee* |
| ) | |
| RURAL COMMUNITY INSURANCE ) | |
| AGENCY, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is a motion to dismiss [Doc. 9] filed by Defendants Federal Crop Insurance Corporation ("FCIC"), the Risk Management Agency ("RMA"), the United States Department of Agriculture ("USDA") and Tom Vilsack, the Secretary of Agriculture ("the Secretary") (collectively the "federal Defendants"). The federal Defendants seek to be dismissed from this action arguing that the waiver of sovereign immunity permitting suit against the government in the Federal Crop Insurance Act ("FCIA") does not extend to the instant case, the RMA and USDA are not properly named as Defendants, and there is no privity of contract between Plaintiffs and the federal Defendants. For the reasons outlined below, the Court will **GRANT** the federal Defendants' motion to dismiss [Doc. 9] and the federal Defendants will be **DISMISSED WITH PREJUDICE**.

**I. FACTS AND PROCEDURAL HISTORY**

The Complaint in this case, filed May 23, 2011, seeks relief from the federal Defendants and the Rural Community Insurance Agency, Inc. ("RCIS"[1]) [Doc. 1 at PageID#: 1-3]. The Complaint

---

[1] Plaintiffs note in the Complaint that Rural Community Insurance Agency, Inc. operates under the name Rural Community Insurance Services in Tennessee and they, as a result, refer to this entity as RCIS [Doc. 1 at PageID#: 4]. The Court will refer to the entity in the same manner for continuity.

alleges that Plaintiff Travis Wanamaker ("Travis") procured an insurance policy from RCIS, an insurance company issuing crop insurance policies pursuant to a reinsurance agreement with the federal government [*id.* at PageID#: 6-7]. The policy was obtained by Travis for the benefit of Plaintiff Three T Nursery ("Three T") for the 2007 crop year in order to provide coverage for the "crops, products, farm and nursery materials and inventory" of Three T, which is located on property in Grundy County and Warren County in Tennessee [*id.* at PageID#: 7].

On or about April 6, 2007, a freeze and/or frost damaged the nursery crops and inventory at Three T [*id.*]. Travis subsequently filed insurance claims with RCIS for the damage and loss that occurred at Three T [*id.*]. After the adjustment process was completed, RCIS denied Travis's claims [*id.* at PageID#: 9]. Pursuant to the terms of the insurance policy, Travis next submitted the claims to arbitration. The May 24, 2010 Arbitration Award awarded $27,999.00 to Travis, but denied any further recovery [*id.*] As a result of the denial of the claims and subsequent unfavorable arbitration award, Plaintiffs allege that all Defendants wrongfully denied the claims, breached their contractual obligations to Plaintiffs, and are jointly and severally liable for the loss at Three T and damages incurred by Plaintiffs, including punitive damages due to fraud and malice [*id.* at PageID#: 7-9].

The federal Defendants filed their motion to dismiss in lieu of an answer to the Complaint on August 31, 2011 [Doc. 9]. Upon notice and consent [Docs. 22, 23 & 25], the case was properly referred to the magistrate judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 [Doc. 26] on February 3, 2012.

II. **STANDARD OF REVIEW**

The federal Defendants make their motion under Federal Rule of Civil Procedure 12(b)(1), alleging that the Court lacks subject matter jurisdiction over the federal entities [Doc. 10 at PageID#:

2

34]. The United States Court of Appeals for the Sixth Circuit distinguished between the two types of subject matter jurisdiction challenges in *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990). "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Id.* at 325 (emphasis in original). When presented with a facial challenge, the reviewing court assumes the allegations in the complaint are true. *Id.* However, "when a court reviews a complaint under a *factual* attack . . . no presumptive truthfulness applies to the factual allegations. . . . When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to . . . [determine] that subject matter jurisdiction exists or does not exist." *Id.* A district court reviewing a motion to dismiss pursuant to Rule 12(b)(1) that asserts a factual challenge has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (citations omitted).

### III. ANALYSIS

The federal Defendants make a factual challenge to subject matter jurisdiction in the instant case by arguing that the facts do not support the existence of subject matter jurisdiction. In support of their factual challenge, the federal Defendants make three arguments: (1) there has been no waiver of sovereign immunity in the applicable sections of the FCIA; (2) the USDA and RMA are not properly named as parties; and (3) alternatively, there is no privity of contract between the federal Defendants and Plaintiffs because their policy—and contract—was with RCIS.

#### A. Waiver of Sovereign Immunity

##### 1. Applicable Law

There are two provisions within the FCIA that speak to the federal Defendants' sovereign

immunity argument. The first provision states that "[t]he Corporation, subject to the provisions of section 1508(j) of this title, may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." 7 U.S.C. § 1506(d). Such a "sue and be sued" clause has been construed by the United States Supreme Court as a broad waiver of sovereign immunity, and the Court has ruled "waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. . . . when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied." *FHA v. Burr*, 309 U.S. 242, 245 (1940); *see also Loeffler v. Frank*, 486 U.S. 549 (1988).

Although the "sue and be sued" provision constitutes a waiver of sovereign immunity, it can be restricted–and was so restricted in the FCIA–by conditioning the waiver on the other provision referenced in the statute, 7 U.S.C. § 1508(j). Therefore, in order to determine the scope of the waiver, the Court must also address 7 U.S.C. § 1508(j), which states in relevant part as follows:

> Subject to subparagraph (B), if a claim for indemnity is denied by the Corporation or an approved provider on behalf of the Corporation, an action on the claim may be brought against the Corporation or Secretary only in the United States district court for the district in which the insured farm is located.

7 U.S.C. § 1508(j)(2)(A). Corporation is defined in 7 U.S.C. § 1502(b)(4) to mean the Federal Crop Insurance Corporation, and "Secretary" means the Secretary of Agriculture. 7 U.S.C. § 1502(b)(8).

Generally, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the

4

sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "Limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981). Any ambiguities in the statutory text are to be construed in favor of immunity. *See United States v. Williams*, 514 U.S. 527, 531 (1995).

### 2. Parties' Arguments

The federal Defendants assert the language "on behalf of" in 7 U.S.C. § 1508(j)(2)(A) requires the FCIC to have participated in the denial of the claim or to have directed the insurance provider to deny the claim before they can be subject to suit [Doc. 10 at PageID#: 40]. The federal Defendants further argue the FCIC did not participate in the denial of the claims in this case because the RMA did not undertake a "large claim review" or direct RCIS to deny the claims [*id.*]. Instead, the RMA merely requested that RCIS review Plaintiffs' insurance application to ensure it met the requirements to attach crop insurance, and the request was made before the freeze damage occurred or the claims were made [*id.*]. Although RCIS attempted to solicit additional guidance from the RMA on the insurability issue as it pertained to Travis's insurance application, the RMA refused to state its position on the issue and said it was RCIS's responsibility to make the decision [*id.* at PageID#: 41]. The federal Defendants argue that RCIS's denial, therefore, was not made on behalf of the FCIC, and the FCIC is not subject to suit because the waiver of sovereign immunity does not extend to this case [*id.*]. In addition to communication between the SRCO and RCIS, the federal Defendants submitted two declarations in support of this argument, one by Roddric Bell with the RMA and one by Tim LeBlanc with the RMA's Southern Regional Compliance Office ("SRCO") [Docs. 10-1 and 10-2].

In response, Plaintiffs assert the "on behalf of" language was added in 2008 and the statute

5

previously provided that plaintiffs could bring an action against the FCIC if their claim was denied by the FCIC *or* if it was denied by an approved provider [Doc. 13 at PageID#: 77-78]. Plaintiffs argue that the claims in this case were denied on behalf of and at the direction of the FCIC and emphasize RCIS's request for direction from the RMA and the RMA's later concurrence with RCIS's decision to deny Plaintiffs' claims [*id.* at PageID#: 75-76, 78]. Plaintiffs contend the RMA was the first entity to question Plaintiffs' insurance coverage, and it initiated the investigation by opening a compliance case and demanding that RCIS undertake its own investigation [*id.* at PageID#: 78]. Plaintiffs argue that during RCIS's investigation, RCIS asked RMA to review the findings, to advise it of any additional concerns, and to let RCIS know if the investigation satisfied their concerns [*id.* at PageID#: 79]. RCIS again sought a response to these questions when one was not immediately forthcoming from RMA and indicated it wanted RMA's instructions before releasing or paying any indemnities [*id.*]. Plaintiffs allege that RCIS's requests for guidance, in addition to the fact that the RMA's compliance case was likely opened in part because of a prior large claim review involving Plaintiffs' family, are direct evidence that RCIS voided Plaintiffs' policy on behalf of and at the direction of the federal Defendants and, at the very least, create a question of fact [*id.* at PageID#: 79-80].[2]

---

[2] While Plaintiffs characterize the question before the Court as a factual dispute, it appears the applicable facts—that is, the actions the RMA took with respect to the subject policy during the time in question, the actions RCIS took, and the decision made—are not actually facts in dispute. Rather, the parties disagree about whether the undisputed facts satisfy the "on behalf of" language; that is, whether the facts are sufficient to support a determination that the RCIS denied Travis's claims on behalf of the FCIC. Plaintiffs argue that the facts are sufficient and federal Defendants argue the opposite. Even if this was a factual dispute, however, in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), "[w]hen facts presented to the district court give rise to a factual controversy, the district court must. . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l*, 922 F.2d at 325.

6

### 3. Analysis

This Court previously addressed similar sovereign immunity arguments in *Cain Field Nursery v. Farmers Crop Ins. Alliance, Inc.*, No. 4:09-cv-78, 2010 WL 3813463 (E.D. Tenn. Sept. 22, 2010) (Judge Mattice) and *Scruggs Farm Nursery v. Farmers Crop Ins. Alliance*, No. 4:09-cv-79, 2010 WL 3813589 (E.D. Tenn. Sept. 22, 2010) (Judge Mattice). In those two cases, the Court held the phrase "on behalf of" did not waive sovereign immunity for similar federal defendants based on quite similar facts. The Court's prior orders noted that no cases explaining the definition of "on behalf of" in the FCIA were cited or found, perhaps due to the recency of the amendment. Such remains true in this case.[3] Thus, the Court must evaluate the meaning of phrase "on behalf of" as well as the facts to determine if RCIS's voidance of Travis's policy was on behalf of the FCIC.

Turning to the facts first, Mr. Bell asserts in his declaration that the RMA was notified of a potential large claim and decided it would not participate in the review of Travis's claims; the RMA notified RCIS of the decision on May 7, 2007 and took no other action with respect to Travis's claims

---

[3] Although not addressed by the parties, there is one Sixth Circuit case which addresses the phrase in a different context. In *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010), the Sixth Circuit addressed whether the phrase "on behalf of" in 8 U.S.C. § 1252(g) precluded federal court jurisdiction in a case where the child of an undocumented immigrant brought suit attempting to stop the Department of Homeland Security from removing his mother from the country. *Id.* at 617. This statute prohibits federal courts from exercising jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Sixth Circuit noted that interpretation of the term "on behalf of" in the statute was a matter of first impression, discussed definitions of the phrase, and determined that the child was bringing suit not on behalf of his mother, but on behalf of his own interest, as the suit alleged violations of his own constitutional rights. *Hamdi*, 620 F.3d at 622-23. In doing so, the court essentially equated "on behalf of" with "in the interest of," as it determined the bar to suit would only exist in situations where one individual was attempting to assert claims on behalf of or in the interest of an alien. Because the son was asserting his own constitutional claims, he was not attempting to assert claims for and in the interest of his mother, although the court acknowledged she would indirectly benefit from the lawsuit if he prevailed. *Id.*

7

after that notification [Doc. 10-1 at PageID#: 45-46]. Mr. LeBlanc states that the SRCO notified RCIS of its compliance case by letter of March 2, 2007 [Doc. 10-2 at PageID#: 47]. The letter specified that the compliance case was focused on insurance policies issued to producers with the last name of Wanamaker and listed several concerns that arose from a large claim review of a previous Wanamaker policy, including identical catalogs, licensing to operate nurseries, and various insurable interest problems that had been identified as to Dusty Wanamaker [*id.* at PageID#: 50-51]. An attachment to the letter listed several policies that RCIS was asked to review to determine if the producers were "insurable persons" and had met the insurability guidelines [*id.* at PageID#: 51-52]. By letter of May 16, 2007, RCIS indicated it had conducted the review and enclosed a fact sheet, asking SRCO to notify it of any other concerns and to confirm the review had satisfied the identified concerns [*id.* at PageID#: 53-56]. RCIS followed up by e-mail of July 17, 2007 and sought guidance from RMA because Plaintiffs had submitted insurance claims for the freeze in the interim, stating "RCIS is interested in your position related to these policies prior to any indemnities being released or paid. Please advise this office of your position related to the subject policies" [*id.* at PageID#: 57]. Mr. LeBlanc responded and directed RCIS to address the insurability issue for each policy and make a determination, which it would report to the SRCO [*id.* at PageID#: 58]. On April 14, 2008, RCIS sent the SRCO a letter indicating it had determined the only payable loss for the 2007 crop year was that of Anthony Wanamaker, as the other producers in question had not provided sufficient proof of insurability [*id.* at PageID#: 62]. The RMA replied in a letter which stated that it concurred with RCIS's actions and was closing the compliance case file [*id.* at PageID#: 63]. Mr. LeBlanc stated in his declaration that no employee with RMA was involved in the insurability review conducted by RCIS, and RMA did not directly cancel any policy or deny any claims [*id.* at PageID#: 49].

8

Turning to the statute, there are two possible ways to find subject matter jurisdiction over the FCIC or the Secretary of Agriculture relevant here: either the FCIC itself denied Plaintiffs' claims or the claims were denied by the insurance company on behalf of the FCIC. As to the first way, there appears to be no dispute that the FCIC did not directly deny Plaintiffs' claims, as the federal Defendants have provided statements that RMA personnel took no action on the policy and Plaintiffs have presented no evidence to the contrary.

As to the second way, the Court concludes the evidence does not support a determination that RCIS denied the claims "on behalf of" the FCIC. Although the FCIC, through the RMA, set in motion the process that essentially led to the denial of the claims, it is too tenuously related to make a determination that the FCIC directed the RCIS to make a particular decision on the claims or was directly involved in the process that led to RCIS's denial, particularly in light of their refusal to give RCIS additional guidance after the fact sheet was submitted to the SRCO. The Court recognizes the crop insurance program involves private insurance companies issuing catastrophic coverage crop insurance policies, the premiums of which are subsidized by the federal government and, as the Court understands it, any payment for a claim submitted pursuant to the policy would be subsidized or paid in part by the government as well. Therefore, if the federal government asks a reinsured insurance company to investigate potentially invalid catastrophic policies, it is not surprising that the insurance company would seek guidance from the government before making any determination as to validity (and particularly before paying claims). Moreover, it is unlikely the insurance company would find the policies to be valid under such circumstances if the policies were not valid—otherwise, the

insurance company might approve a claim that the federal government would later refuse to pay.[4]

This interplay between the insurance company and the FCIC could mean the FCIC, through the RMA, plays some part in the denial of some claims when it directs the private insurance companies to conduct reviews of policies the company has issued. The Court finds this involvement, however, does not amount to the denial of the claims in this case as occurring "on behalf of" the FCIC. As the Court noted above, a waiver of sovereign immunity must be explicit, and ambiguities must be resolved in favor of the sovereign. Thus, because the phrase "on behalf of" is subject to more than one interpretation, this ambiguity must be resolved in favor of finding the federal Defendants immune from suit.

In the context of the prior version of the statute—which permitted suit against the FCIC in any crop insurance case involving the denial of a claim—it is apparent Congress intended to limit the waiver of sovereign immunity to a specific, narrower set of cases. The factual circumstances that would give rise to this narrower set of cases is currently undefined. Perhaps "on behalf of" could mean sovereign immunity is waived in cases where the FCIC (or RMA) gave the private insurance

---

[4] For example, the 2013 Standard Reinsurance Agreement reads that "if a review or examination reveals that the Company or its affiliates have committed an error or omission or failed to comply with a term of the Act, this Agreement, regulations, or FCIC procedures, FCIC will provide written notice to the Company within 3 years of the end of the insurance period when the error, omission or failure occurred, if the Company owes a debt to FCIC. . . "
*2013 Standard Reinsurance Agreement*, Section III(c)(4), page 28, http://www.rma.usda.gov/pubs/ra/sraarchives/13sra.pdf.

It is worth noting that from the genesis of the crop insurance program, there appears to have been a shift from the FCIC servicing crop insurance policies and handling claims to private insurance companies issuing policies pursuant to reinsurance agreements, such that 100% of all policies are now issued through and serviced by private insurance companies [Doc. 10 at PageID#: 37]. It seems the FCIC and the RMA now generally propose regulations and policy provisions for the crop insurance program, review compliance with regulations and policy provisions, and conduct large claim reviews and administrative reviews of decisions made on large claims.

10

Case 4:11-cv-00029 Document 34 Filed 03/29/12 Page 10 of 14 PageID #: 187

company a direction to deny a claim. Waiver might even be found to extend to a case in which the FCIC gave no explicit direction to deny a claim, but was so heavily involved in the private insurance company's adjustment and denial process that the denial might be deemed "on behalf of" the FCIC. Here, however, the facts are not nearly sufficient enough to rise to the level of being "on behalf of" the FCIC. The Court concludes RCIS's denial of the claim was not on behalf of the FCIC, as neither the FCIC nor RMA stated an opinion on the validity of the policy in this case or any of the policies at issue in the compliance case and, as noted above, refused to provide any further direction to RCIS during the process. Moreover, RCIS was the manager and administrator of its own policies, was directed to make its own decisions, and did make its own decision with respect to the claims; the fact that its actions would ultimately affect the FCIC as a reinsurer does not make its decision "on behalf of" the FCIC.

In the absence of an explicit waiver of sovereign immunity to allow the FCIC and the Secretary to be subject to suit in a case such as this, where the private insurance company adjusts, reviews, and decides claims submitted on policies they issued, Plaintiffs' action cannot proceed

against the FCIC and the Secretary.[5]

### B. USDA and RMA

The Court has already determined the FCIC and the Secretary are not subject to suit. As to the RMA and the USDA, the federal Defendants assert that these entities are improperly named as parties because only the FCIC or Secretary are proper parties under the statute [Doc. 10 at PageID#: 41]. Plaintiffs submit the RMA and the USDA are proper Defendants because the RMA is the operator and manager of the FCIC and it was the RMA's SRCO that opened the compliance case at issue; as for the USDA, Plaintiffs cite to *Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488 (S.D. Ohio 2006) for the proposition that the FCIC and the RMA are interchangeable and the FCIA confers federal jurisdiction over the RMA or the Secretary [Doc. 13 at PageID#: 80-82].

Title 7 U.S.C. § 1506 and 1508 do not provide for suit against the RMA or the USDA, and it does not appear the case cited by Plaintiffs stands for the proposition advanced, as it states the RMA was the FCIC's replacement, which is not entirely accurate. The FCIC still exists, but much

---

[5] It appears Plaintiffs may only seek relief from the private insurance company. Although the FCIA contains little guidance as to suits against private insurance companies, multiple courts have noted there is nothing in the FCIA prohibiting state law claims (and state court cases) against private insurance companies issuing reinsured policies. *See Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 686-87 (5th Cir. 2001) ("The court finds no evidence that Congress intended to so displace state law claims against agents who sell policies reinsured by the FCIC as to convert them to federal claims"); *Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 635 (11th Cir. 1997) ("Congress intended to leave insureds with their traditional contract remedies against their insurance companies . . . includ[ing] a state law breach of contract claim."); *Bullinger v. Trebas*, 245 F. Supp. 2d 1060, 1066 (D.N.D. 2003) (finding that the FCIA did not completely preempt state and common law claims against private insurance companies and did not create a federal cause of action for lawsuits filed against such companies); *Agre v. Rain & Hail, LLC*, 196 F. Supp. 2d 905, 912 (D. Minn. 2002); *Reimers v. Farm Credit Servs. AgCounty, ACA*, No. CIV. A3-00-168, 2001 WL 1820379, at *3-4 (D.N.D. June 22, 2001) (noting the "FCIA contains no section or language expressly limiting the right to bring state causes of action against private insurers in state court.");

12

of the FCIC's programs are administered by the RMA. *See* About the Risk Management Agency, http://www.rma.usda.gov/pubs/rme/aboutrma.pdf. Some courts have held the FCIC and RMA are essentially interchangeable. *See US v. Hawley*, 619 F.3d 886, 889 (8th Cir. 2010) ("In 1996, Congress created the Risk Management Agency ("RMA"), which administers the federal crop insurance program on behalf of the FCIC. We refer to the FCIC and the RMA jointly as the FCIC."); *William J. Mouren Farming, Inc. v. Great Am. Ins. Co.*, No. CV F 05-0031 AWI LJO, 2005 WL 2064129, at *2 (E.D. Cal. Aug. 24, 2005) ("The United States Department of Agriculture Risk Management Agency ("RMA") administers FCIC. For all relevant and practical purposes, the RMA and the FCIC are one and the same.").

Based on the structure of these entities and the FCIA's provision for suit only against the FCIC or the Secretary, the Court concludes that suit against the FCIC and the Secretary would encompass the entirety of Plaintiffs' claims against the federal Defendants, as suit against the FCIC would encompass claims against the RMA, which administers the programs of the FCIC. Likewise, claims against the USDA would be addressed by naming the Secretary.[6] As such, there are no separate claims against the RMA and USDA that would survive the dismissal of the FCIC and the Secretary.

### C. Privity of Contract

Because the Court has already determined that subject matter jurisdiction is improper over the federal Defendants due to the limited scope of the sovereign immunity waiver in the FCIA, it is not necessary to address the federal Defendants' alternative argument with respect to privity of

---

[6] As a general matter, the USDA is the umbrella organization over the RMA, which in turn administers FCIC programs.

13

contract.

## IV. CONCLUSION

Accordingly, for the reasons explained above, the federal Defendants' motion to dismiss [Doc. 9] is **GRANTED** and the FCIC, the RMA, the USDA, and the Secretary of Agriculture are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against RCIS will proceed in accordance with the previously announced briefing schedule [Doc. 33].

SO ORDERED.

ENTER:

                                             s/ *Susan K. Lee*
                                             SUSAN K. LEE
                                             UNITED STATES MAGISTRATE JUDGE