UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| THREE T NURSERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 4:11-cv-29 |
| v. | ) | *Lee* |
| | ) | |
| RURAL COMMUNITY INSURANCE | ) | |
| AGENCY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiffs and Defendant Rural Community Insurance Agency, Inc. [Docs. 42 & 51]. The Court previously ruled that the applicable standard of review in this case would be pursuant to the Federal Arbitration Act ("FAA") [Doc. 38] and, as such, the parties' motions for summary judgment turn on the narrow statutory provisions of the FAA. For the reasons outlined below, Plaintiffs' motion for summary judgment [Doc. 51] seeking vacatur of the arbitration award will be **DENIED**, Defendant's motion for summary judgment [Doc. 42] seeking confirmation of the arbitration award will be **GRANTED**, and the Award of Arbitrator will be confirmed.

## I. PROCEDURAL BACKGROUND AND FACTS

Plaintiffs allege in the complaint that Plaintiff Travis Wanamaker ("Travis") is the owner and operator of a farming and nursery business known as Three T Nursery ("Three T") in Grundy County and Warren County, Tennessee [Doc. 1 at PageID# 4]. Plaintiffs Anthony and Catrenia Wanamaker ("Anthony" and "Catrenia") are former owners and operators of Three T and the parents of Travis [*id.*, Doc. 69 at PageID# 484]. Plaintiffs allege that Defendant Rural Community Insurance Agency, Inc., which operates under the name Rural Community Insurance Services ("RCIS"), issued Travis an insurance policy providing coverage for the crops and products at Three T for the 2007 crop year [*id.* at PageID# 4, 6-7]. On or about April 6, 2007, crops at Three T were damaged by a freeze or a frost, and Travis filed insurance claims on behalf of himself and Three T to recover for the damage to the crops [*id.* at PageID# 7]. Plaintiffs allege the insurance policy provided coverage for the damaged crops and they properly submitted a claim; however, RCIS failed to pay the claim made against the policy [*id.* at PageID# 7-8]. Plaintiffs state that following adjustment of the claim by RCIS and the subsequent denial, the claim was submitted to arbitration pursuant to the terms of the insurance policy [*id.* at PageID# 9]. An arbitration award was issued on May 24, 2010 which awarded Travis $27,999.00 but denied further recovery [*id.*]. Plaintiffs therefore filed suit seeking additional damages pursuant to the insurance policy, along with attorneys fees and other expenses [*id.*].

The Award of Arbitrator for Case No. 30 430 00276 09 includes additional relevant facts as follows, along with the arbitrator's determination:

> 1. . . . For the 2007 and 2008 crop years, Wanamaker was an RCIS Policyholder, insuring nursery crops at the Three T Nursery in Grundy County (Policy No. 859085) and Warren County (Policy No. 859087).

2

2. There was a freeze loss at the Three T Nursery on or about April 6, 2007.

3. This freeze loss was an insurable loss under the terms of Wanamaker's crop insurance policy.

4. RCIS retroactively determined that Wanamaker was not eligible for crop insurance for the 2007 or 2008 crop years because he did not satisfy the eligibility requirements established for federally-reinsured crop insurance.

5. RCIS cancelled Wanamaker's crop insurance policies for the 2007 and 2008 crop years, refunded his premiums, and denied his 2007 claim for crop loss indemnity.

6. Wanamaker filed a Demand for Arbitration under the Commercial Arbitration Rules of the AAA, challenging the denial of his 2007 indemnity claim.

7. In his Claim, Wanamaker also seeks attorneys' fees, interest, arbitration cost and punitive/exemplary damages.

8. Federal regulations define "insurable interest" for the purposes of this crop insurance policy to mean the "value of the producer's interest in the crop that is at risk from an insurable cause of loss during the insurance period." 7 C.F.R. § 400.651.

9. In order to have an insurable interest in the insured crop, the value of Wanamaker's interest in the crop that is at risk, if any, must be determined.

10. The Act defines an eligible producer to include an individual who assumes "the production and market risks associated with the agricultural production of crops....." 7 U.S.C. § 1531.

11. Although much of the market and production risks of Three T Nursery are ultimately borne by others (*e.g.*, his parents are responsible for repayment of the Farm Credit Services line of credit which was used to finance Wanamaker's nursery stock), the evidence shows that Wanamaker contributed labor and supervision to the operation.

12. Wanamaker's involvement in the operation of Three T Nursery was sufficient to vest him with an insurable interest in the nursery

> stock, but because his interest is limited to labor and supervision, it is significantly less than 100 percent.
>
> 13.   Wanamaker's 2008 U.S. Individual Income Tax Return (Claimant's Exhibit 18) indicates that Wanamaker was paid $27,999.00 in compensation by his parents' nursery, Dry Shave, for calendar year 2007.  I find that this amount, $27,999.00 is a fair and reasonable estimate of the value of Wanamaker's labor and supervision of the Three T Nursery for the 2007 policy period, and that he is awarded that amount as judgment on his claim.

[Doc. 42-1].

## II.   STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The applicable substantive law provides the frame of reference to determine which facts are material.  *Anderson*, 477 U.S. at 248.  A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party.  *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute.  *Id.* at 249.  Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907.  A mere scintilla of evidence is not enough to survive a motion for summary judgment.  *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011). The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

The FAA provides the parties may apply to the court for a confirmation of the award within one year of the award (9 U.S.C. § 9), the award may be vacated for various grounds (9 U.S.C. § 10), and a court may modify or correct an arbitration award (9 U.S.C. § 11). Although the FAA itself does not explicitly address the court's standard of review when faced with a lawsuit essentially appealing an arbitration award, the United States Court of Appeals for the Sixth Circuit has indicated that the FAA "'expresses a presumption that arbitration awards will be confirmed . . . . When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest

5

standards of judicial review in all of American jurisprudence.'" *Uhi v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)). "Courts should be hesitant to [disturb arbitration awards] . . . in order to protect the finality of arbitration decisions." *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003) (citations and internal quotations omitted).

**III.   ANALYSIS**

Plaintiffs have filed a motion for summary judgment in which their sole request is that the Court vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4), which provides for vacation "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* Plaintiffs argue the arbitrator so imperfectly executed his powers such that a mutual, final and definite award upon the subject matter submitted was not made [Doc. 52 at PageID# 371]. Plaintiffs specifically argue the arbitrator's finding as to Travis Wanamaker's insurable interest was flawed because the arbitrator failed to make specific findings or mention other interests Travis had in the nursery inventory [*id.*]. Plaintiffs contend Travis's deposition establishes that he leased the property from another individual, paid the lease fee himself, owned the nursery stock that was initially given to him by his parents because he considered it a loan to be repaid, bought additional stock for the nursery, sold inventory back to his parents and sold inventory to other individuals, and paid his parents for using their equipment [*id.* at PageID# 371-72]. Plaintiffs assert that ignoring these additional insurable interests provides grounds for vacation pursuant to 9 U.S.C. § 10(a)(4) and the Court is obligated to vacate the award [*id.* at PageID# 372].

Defendant has also filed a motion for summary judgment, in which it seeks confirmation of

6

the arbitration award. Defendant argues the Court can undertake only limited review of the award under the FAA, which provides narrow and specific grounds for vacating or modifying awards [Doc. 44 at PageID# 295-97]. Given this narrow review, Defendant contends nothing in the record supports vacatur or modification of the award, as the arbitrator made comprehensive findings of fact and conclusions of law and reached a proper conclusion [*id.* at PageID# 297-98]. Defendant asserts the arbitrator properly found that Travis did not have a 100% interest in the crops at Three T because Defendant claims Travis had only a minor interest in the damaged crop and that he made a misrepresentation on his insurance application form when he did not disclose his parents' interest [*id.* at PageID# 298]. Defendant argues it was appropriate for the arbitrator to make an award to Travis in the amount determined to be his insurable interest and that the award should be confirmed [*id.* at PageID# 299]. Defendant notes that this Court's prior holding in *Skymont Farms v. Fed. Crop Ins. Corp.*, No. 4:09-cv-65, 2012 WL 1193407 (E.D. Tenn. Apr. 20, 2012) would compel the result of no recovery for Travis based on the material misrepresentation on his application, but the Court should nonetheless confirm the arbitration award because there is no basis for vacating or modifying the award [*id.* at PageID# 299-300]. Defendant asserts there is nothing in the record or the award to indicate that vacation or modification is warranted, and the Court is not to reconsider the merits of the arbitrator's award but should instead undertake a limited review [*id.* at PageID# 300-04]. Defendant argues for confirmation of the award and, in the alternative, if the Court finds the award should be modified, Defendant contends the modification should be to zero recovery in light of *Skymont Farms* [*id.* at PageID# 303-06].

As noted above, Plaintiffs' argument is confined to 9 U.S.C. § 10(a)(4), which states in full part as follows:

> (a) In any of the following cases the United States courts in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
>
> . . .
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(4). This provision has been interpreted by courts to be appropriately invoked "when an arbitrator strays from interpretation and application of the [policy] and effectively dispenses his own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1769 (2010) (internal quotations and citation omitted). The proper inquiry under 9 U.S.C. § 10(a)(4) is "not whether the arbitrators' ruling was erroneous, but whether the arbitrators 'exceeded their powers.'" *Id.* at 1781 (quoting the statute). The United States Court of Appeals for the Sixth Circuit has noted that "[t]he burden of proving that the arbitrators exceeded their authority is very great." *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (internal quotations and citation omitted). "The terms of the contract define the powers of the arbitrator, and 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "And if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* (internal quotations and citation omitted).

The parties have jointly stipulated to various exhibits which constitute the record in this case; it appears the most relevant pieces of evidence are the insurance applications [Docs. 67 & 68], the insurance policy at issue [Docs. 46-49], the deposition of Travis Wanamaker [Docs. 69-79], and the

8

Award of Arbitrator [Doc. 80].[1] There are two applications filled out by Travis (or insurance agent Jeffrey Lawson) to secure the insurance policies at issue: one for Grundy County and one for Warren County [Docs. 67 & 68]. On each application, there is a section for names of individuals which reads "FOR SPOUSAL ENTITIES, INDICATE SPOUSE'S NAME & SSN/EIN IN FIELDS PROVIDED ABOVE. FOR OTHER INSURED ENTITIES, LIST ALL PERSONS OR ENTITIES WITH 10% OR MORE INTEREST IN THE APPLICATION" [Doc. 67 at PageID# 472, Doc. 68 at PageID# 475]. Neither application has another individual or entity listed in these blanks.

The insurance policy contains the following relevant definitions:

> Insured - The named person as shown on the application accepted by us. This term does not extend to any other person having a share or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically indicated on the accepted application.
>
> . . .
>
> Share - Your percentage of interest in the insured crop as an owner, operator, or tenant at the time insurance attaches. . . .
>
> Substantial beneficial interest - An interest held by any person of at least 10 percent in you. The spouse of any individual applicant or individual insured will be considered to have a substantial beneficial interest in the applicant or insured. . . .

[Doc. 46 at PageID# 330-31]. As the arbitrator noted, "insurable interest" is defined in the federal regulations governing the crop insurance policy as "[t]he value of the producer's interest in the crop that is at risk from an insurable cause of loss during the insurance period." 7 C.F.R. § 400.651.

In Travis's deposition, the following information is provided. Travis's father Anthony

---

[1] No arbitration transcript was filed by the parties; instead, the parties filed the transcript of the deposition of Travis Wanamaker, which was "provided for the arbitration proceedings" [Doc. 52 at PageID# 371; Doc. 86 at PageID# 591].

9

owned and operated Dry Shave Mountain Nursery ("Dry Shave") and Travis grew up working in the business [Doc. 69 at PageID# 487]. After Travis was married and started his family, he started to operate his own nursery, which later became known as Three T Nursery [*id.* at PageID# 487-88]. The land upon which Three T crops were grown was owned by Hugh Curtiss and Travis paid the annual leasing fee out of Three T income pursuant to an oral understanding between them, an understanding that was previously between Mr. Curtiss and Anthony [Doc. 70 at PageID# 489-90, 492-93; Doc. 76 at PageID# 540]. Travis received various loans from his parents in the form of nursery stock and had recently paid his father back by giving him a 60% share in his nurseries; prior to that Three T was a sole proprietorship [Doc. 70 at PageID# 490-92, Doc. 75 at PageID# 526-27]. Dry Shave, Three T and other family nurseries shared an office, where the phone was answered simply "nursery" [Doc. 70 at PageID# 492, Doc. 73 at PageID# 510]. Travis's mother Catrenia maintained the financial and accounting records for at least three of the family nurseries and Travis did not review the books for Three T on a regular basis [Doc. 75 at PageID# 536-37]. Travis's mother and other family members had the ability to sign checks from the Three T account [Doc. 74 at PageID# 523]. In the years 2006, 2007, and 2008, Travis was paid as an employee of Dry Shave, his title was field manager, and he helped his father grow and ship trees [Doc. 77 at PageID# 547-48]. Travis's wife was also employed by Dry Shave as a part-time secretary [*id.* at PageID# 549].

Dry Shave, Three T, and Travis's brother Dusty Wanamaker's ("Dusty") nursery Skymont Farms ("Skymont") all maintained essentially identical catalogs of crops for sale [Docs. 72 & 73 at PageID# 504-13]. The catalogs listed all crops available across the various nurseries owned by the Wanamakers; for example, Travis's nursery would not have all those crops, but he could obtain them from his father's or brother's nursery [Doc. 72 at PageID# 505-07]. An order might come through

10

Travis's nursery and he would take the sale even though the crops would come from other farms [Doc. 73 at PageID# 510]. If Travis sold trees located on his father's nursery or vice versa, each was responsible for digging trees on their own nurseries [Docs. 73 & 74 at PageID# 517-18]. Each nursery had a different sales form [Doc. 74 at PageID# 519]. There was no record kept of what orders involved which trees from which nurseries, although Travis did initial by the trees which came from Travis's nursery stock on various forms, which helped the calculations of trees sold by each nursery for tax forms [*id.* at PageID# 520, Doc. 75 at PageID# 528-30]. Most of the orders came through Dry Shave, as it was an established business, and the family also bought stock from other nurseries to fill orders if necessary [Doc. 75 at PageID# 531]. If a Dry Shave order included Three T plants, Travis may not have been reimbursed for the sale of his plants because of the debt he owed to his father [*id.* at PageID# 532-33]. With some orders, Travis would instruct the customer to make the check out to Dry Shave if it included Dry Shave or Skymont plants [Docs. 75 & 76 at PageID# 533-34]. As a result, most of the sales from the 2007 calendar year were sales to Dry Shave [Doc. 76 at PageID# 534]. The use of identical catalogs across multiple nurseries and obtaining trees from other nurseries to sell to customers was a common practice in the nursery industry called brokering [Doc. 78 at PageID# 553-55].

Travis had one main employee for Three T, Jaime Terrazas, and other part-time help, but all employees also worked at his father's and brother's nurseries [Docs. 70 & 71 at PageID# 493-95]. The three tried to divide up the work of employees across nurseries, but they each had their own individual employee [Doc. 71 at PageID# 495]. Travis managed the day-to-day operations of Three T with the assistance of his father and brother, and he likewise assisted with their nurseries [*id.* at PageID# 494]. Travis made the decisions on when to restock plants at Three T with the assistance

11

of his father, but Three T paid for repurchasing stock and Travis made the final decision on planting [Doc. 74 at PageID# 521; Doc. 78 at PageID# 556-57]. Travis did not have a license to ship plants out of state [Doc. 73 at PageID# 514-15]. When he needed to transport sold plants, he used his father's trucks, as Three T did not own its own trucks [*id.* at PageID# 515-16]. Travis did not pay his father for the use of the trucks, he was just able to use them when they were needed [*id.* at PageID# 516]. Anthony also owned a larger digging spade that Travis and his brother had access to for digging up trees [Doc. 74 at PageID# 519]. Travis did not own any of his own equipment and borrowed other equipment from his father to work on the nursery; there was no arrangement for repayment for the use of the equipment, but Travis sometimes paid to have the equipment repaired to help out his father [Doc. 74 at PageID# 519; Doc. 76 at PageID# 537-38; Doc. 78 at PageID# 556].

In relevant part, the arbitrator found that "much of the market and production risks of Three Tree Nursery [were] ultimately borne by others" due to Travis's parents being responsible for the line of credit used to finance his nursery stock, but that Travis "contributed labor and supervision to the operation" [Doc. 80 at PageID# 560]. As such, the arbitrator found that his "involvement in the operation of Three T Nursery was sufficient to vest him with an insurable interest in the nursery stock, but because his interest is limited to labor and supervision, it is significantly less than 100 percent" [*id.*].[2]

---

[2] The arbitrator made these findings because he had to determine Travis's insurable interest in the crop covered by the insurance policy. RCIS represents that it canceled his policies based on the misrepresentation on his application that he and his wife had a more than 90% interest in the crops to be insured - that is, that no other individual or entity had more than a 10% insurable interest in the same crops [Doc. 44 at PageID# 298-99]. Therefore, the arbitrator had to determine whether this was an accurate portrayal of Travis's insurable interest.

After reviewing the Award of Arbitrator and the materials submitted by the parties which constitute the record, the Court concludes vacation of the award pursuant to 9 U.S.C. § 10(a)(4) is not appropriate. There is no evidence the arbitrator exceeded his powers or interpreted the insurance policy in such a way to signify he stepped beyond the scope of his authority. Instead, the arbitrator apparently construed the policy to mean that an individual could be insured only to the extent of his or her insurable interest, determined Travis's insurable interest was far less than 100 percent, and awarded Travis what the arbitrator thought was a fair and reasonable amount for the extent of his insurable interest. As noted above, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.'" *Solvay*, 442 F.3d at 476 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Although the arbitrator did not make specific findings of fact about Travis's involvement in the operation, there are many facts which support his ultimate conclusion that Travis's contribution was primarily in labor and supervision; for example, Travis did not own the land upon which his nursery crops were grown,[3] he did not own his own equipment or trucks, his father and brother assisted him with the daily operations at Three T and he did the same in kind for their nurseries, his initial nursery stock was given to him by his parents, and employees were shared between the family nurseries. To be sure, Travis's deposition established other facts which speak to him having an insurable interest in the Three T crops, such as his payment of the rent or lease fee on the land out of Three T funds, supervision of his employee's work at the nursery, his own labor and

---

[3] It is not necessary to reach any conclusion on the matter, but it is conceivable that a landlord would have an insurable interest in crops grown on land he or she owns.

13

decisionmaking power, the purchase of stock for replanting out of Three T funds, and sales of plants from his nursery. As to the degree of that insurable interest, the arbitrator explicitly found the weight of the facts established that Travis's interest was significantly less than 100 percent, and instead of completely voiding the policy, as RCIS did, the arbitrator determined the amount of Travis's insurable interest in order to make an award under the policy.

Even if it was error for the arbitrator to reach his conclusion as to the amount to which Travis was entitled, which the Court does not find it was, any error would still not provide grounds for vacation of the award pursuant to 9 U.S.C. § 10(a)(4) because the arbitrator arguably construed the policy within the scope of his authority and did not exceed his powers.[4] Therefore, the Court finds no grounds for vacation of the award and instead finds the arbitrator fulfilled his duties and reached a reasonable conclusion which should not be disturbed by the Court. Accordingly, the Award of Arbitrator dated May 24, 2010 shall be confirmed pursuant to 9 U.S.C. § 9.

## IV. CONCLUSION

For the reasons outlined above, Plaintiffs' motion for summary judgment [Doc. 51] seeking vacatur of the arbitration award is **DENIED** and Defendant's motion for summary judgment [Doc. 42] seeking confirmation of the arbitration award is **GRANTED**. The Award of Arbitrator dated May 24, 2010 [Doc. 80] is **CONFIRMED**.

---

[4] Furthermore, as Defendant points out, if the Court were to vacate the award pursuant to 9 U.S.C. § 10(a)(4) and modify it pursuant to 9 U.S.C. § 11, it is likely the Court would reach the same conclusion concerning the insurance policy here as it did in the *Skymont Farms* case, in which the Court found Dusty made a material misrepresentation by not disclosing his parents as having a more than 10% interest in the insured crops. As a result, the Court found the insurance company had properly voided Dusty's insurance policy and neither he nor his parents were able to recover any damages for the crop loss at issue. *See Skymont Farms v. Fed. Crop Ins. Corp.*, No. 4:09-cv-65, 2012 WL 1193407, at *7-11 (E.D. Tenn. Apr. 20, 2012).

The case shall be **DISMISSED WITH PREJUDICE**. A separate judgment shall enter.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE